OPINION
{¶ 1} Carol Johnson ("appellant") appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, adopting the magistrate's decision granting legal custody to Leona Woodard. For the reasons that follow, we affirm.
 {¶ 2} Carneile Rowe was born on June 6, 1998. Shortly after her birth, Carneile was abandoned by her birth mother and alleged birth father. On February 16, 1999, Franklin County Children Services ("FCCS") obtained a temporary order of custody of Carneile. FCCS' temporary custody was terminated in October 1999 when appellant obtained legal custody of Carneile, after an investigation was completed and approved by FCCS. Appellant has been Carneile's primary caregiver since this time. However, on or about May 7, 2001, the court issued an emergency custody order to FCCS and removed Carneile from appellant's custody. Carneile was nearly three-years old at the time. The order was a result of Carneile being left in a house with deplorable living conditions. The floor was covered with objects, including a number of lawn mowers in the living room. There were five or six dogs in the home with dog feces on the floor, and debris everywhere. Carneile was covered with dirt and her clothes were soaked in urine. Apparently, appellant left Carneile with her sister-in-law who then took Carneile to the above-mentioned house for reasons that are not clear in the record.
 {¶ 3} Appellant eventually came to the intake department at FCCS to get Carneile. It appeared that appellant was intoxicated and she admitted that she had a small amount of alcohol prior to her arrival. The intake report states that appellant's eyes were blood shot, her speech was slurred, she was not wearing any shoes, and she smelled of alcohol. Appellant denied being "intoxicated." Appellant has a history of substance abuse, although she asserts that she has been clean from street drugs for 15 years. Notwithstanding, appellant is currently taking prescription medications including Xanax and Firoicet, both of which are highly addictive.
 {¶ 4} After removal, FCCS established a case plan with the goal of reunification. Carneile was placed in foster care until December 17, 2001 when Leona Woodard ("Ms. Woodard") agreed to take Carneile in her home. Ms. Woodard is Carneile's maternal great grandmother. On April 8, 2002, FCCS filed a motion to terminate its temporary custody and grant legal custody to Ms. Woodard. Appellant filed a competing motion for custody on May 1, 2002.
 {¶ 5} The magistrate conducted a hearing on June 17, 2002 and June 21, 2002. Appellant testified on her behalf. After hearing all the evidence, the magistrate concluded that it was in Carneile's best interest to grant custody to Ms. Woodard. Appellant filed objections to the magistrate's decision. The trial court conducted a de novo review including oral argument, and sustained the magistrate's decision. This appeal followed.
 {¶ 6} Appellant asserts the following assignment of error:
The trial court erred by overruling appellant's objections to the magistrate's decision and by denying appellant's motion for custody of the child. The record does not support the finding by clear and convincing evidence, that denying custody to appellant and awarding custody to the maternal great-grandmother was necessary to promote Carneile's best interest.
 {¶ 7} Appellant maintains that the trial court must find legal custody was in Carneile's best interest by clear and convincing evidence. The guardian ad litem proposes the proper standard is a preponderance of the evidence as the hearing at issue was merely dispositional. Juv.R. 29(E)(4) directs that in adjudicatory hearings, the court shall "[d]etermine the issues * * * by clear and convincing evidence in dependency * * * and abuse cases, * * * and by a preponderance of the evidence in all other cases." (Emphasis added.) Juv.R. 34 governs dispositional hearings and does not articulate a burden of proof on the trial court. Therefore, if the hearing at issue was dispositional, no more than a preponderance of the evidence is required. Here, Carneile was adjudicated dependent well before the hearing at issue. However, the magistrate applied the clear and convincing standard and presumably the trial court affirmed based on that same standard. We need not decide whether the hearing at issue was dispositional or adjudicatory in nature. Under either standard, we find the judgment is supported by a substantial amount of competent, credible evidence.
 {¶ 8} After adjudicating a child as dependent, the court may award legal custody of Carneile to any person who files a motion before the dispositional hearing. R.C. 2151.353(A)(3); In the Matter of Bradford, Franklin App. No. 01AP-1151, 2002-Ohio-4013. In doing so, the court shall consider the best interests of the child. Bradford, supra. A trial court's decision regarding legal custody will not be reversed if the decision is supported by a substantial amount of competent, credible evidence absent an abuse of discretion. Bechtol v. Bechtol (1990),49 Ohio St.3d 21. " `The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' " Bradford, supra, quoting Miller v. Miller (1988), 37 Ohio St.3d 71, 74. The knowledge gained by the trial court through the observation of witnesses and parties cannot be conveyed to a reviewing court by a printed record. Id. Accordingly, the reviewing court is guided by the presumption that the trial court's findings were correct. Id.
 {¶ 9} Appellant maintains that she has substantially complied with her case plan and is therefore entitled to have Carneile returned to her. She further argues that because she was making progress on the case plan, she should have been given more time to complete it before granting legal custody to Ms. Woodard. We disagree.
 {¶ 10} After the case plan was compiled, appellant signed it and the assigned caseworker went over it with her in detail.[1] The case plan included drug and alcohol issues, mental health issues, parenting issues and living conditions.[2] Appellant completed a drug and alcohol assessment in May 2001. The assessment was necessary due to appellant's past problems with drug abuse and her condition the day she arrived at intake to retrieve Carneile. The recommendations from the assessment included individual counseling, a psychiatric evaluation and a drug and alcohol relapse prevention program such as Alcoholics Anonymous ("AA"). Appellant claims she did not know she was required to have a psychiatric evaluation. The caseworker testified that her case plan also included random urine screens and participation in mental health counseling to deal with her diagnoses of severe depression and bi-polar disorder.
 {¶ 11} Appellant completed a psychological evaluation (not psychiatric) in August 2001. She participates in individual counseling with Dr. Scott Craig to deal with her severe depression and bi-polar disorder, and personal issues. However, the caseworker testified that appellant declined her assistance with enrollment in mental health counseling. Appellant also testified that she declined case management services from a reputable mental health agency because she did not feel she needed the services.
 {¶ 12} Regarding the case plan objective for parenting classes, appellant attended a program at Catholic Social Services ("CSS") and obtained a certificate of completion. However, the caseworker never got the chance to speak to CSS because appellant did not give the certificate of completion until the day of trial despite numerous requests for documentation. The caseworker testified that generally, she/he will contact the agency where the program was conducted and ask certain questions about the individual who attended, e.g., whether appellant actually benefited from the program.[3] That did not happen in this case.
 {¶ 13} As stated above, appellant takes prescription medications. She takes Firoicet for migraines and back pain "when needed," Xanax for anxiety "as needed," and Effexor for depression. Appellant did complete random urine screens most of which tested positive for barbiturates, consistent with her taking Firoicet for back pain. However, the caseworker had ongoing concerns that appellant might be abusing her prescriptions. For example, appellant testified that she takes Firoicet approximately 20 days out of 30 days even though she is supposed to take it only "as needed." Appellant admitted drinking a small amount of alcohol on the day Carneile was removed, despite her knowledge that mixing alcohol with her prescriptions was extremely dangerous. Appellant also acknowledged her past abuse with prescription drugs, including buying them on the street.
 {¶ 14} With respect to a drug and alcohol relapse prevention program, appellant testified that she attended some AA meetings. Appellant introduced handwritten AA slips, all of which were torn out of the same spiral notebook and presented to the caseworker on the day of trial. All of the slips contained the same illegible signature on them. The caseworker testified that these slips did not appear the same as slips she has received from other clients. Further, appellant could not recite the "12 steps" included in AA's 12-step program. Further, appellant did not attend any meetings from May 2001 through February 2002 even though Carneile was removed in May 2001. Appellant only started going to AA meetings several months before trial. Appellant acknowledged that she did not complete any drug and alcohol treatment program. The caseworker also testified that Carneile spoke to her in detail about trips Carneile took with appellant to bars.
 {¶ 15} Appellant never received a psychiatric evaluation. Appellant claimed that she was not aware of this requirement. The caseworker testified to the contrary. In fact, the caseworker did not give appellant any referrals for psychiatric treatment because appellant stated that she wanted to do it herself. This evaluation was recommended as part of her case plan to determine which medications were actually necessary for appellant to take due to the high likelihood of dependency with Firoicet and anti-depressants and in light of her past abuse of prescription drugs. Her failure to obtain a psychiatric evaluation is significant since the crux of FCCS' concern is that appellant may have a drug and alcohol problem.
 {¶ 16} FCCS also had concerns with Carneile's weight when she was first removed. Carneile also acted out sexually on occasion by touching herself. Since Carneile has been living with Ms. Woodard, there has been only one incident of touching herself and Ms. Woodard handled it.
 {¶ 17} After reviewing this evidence, the trial court went on to determine if it was in Carneile's best interest to return her to appellant's custody. The trial court answered that question negatively. The court discussed the factors listed in R.C. 2151.414(D) to assist in the determination of Carneile's best interest.[4] Relevant factors to consider include: (1) the interaction and interrelationship between Carneile and Carneile's parents, siblings and other relatives; (2) the wishes of the child expressed directly by the child or a guardian ad litem; (3) the custodial history of the child; and (4) the child's need for a legally secure placement.
 {¶ 18} As applied in this case, the trial court found Carneile had no relationship with her biological parents. Appellant and Carneile interacted well before removal but Carneile does not show a lot of emotion now when separated from appellant. Carneile interacts well with Ms. Woodard and the four other children in Ms. Woodard's home. The court found no evidence as to Carneile's wishes. According to Ms. Woodard, Carneile never stated a desire either way. The court found Carneile lived with appellant from the time she was 11 months old until she was nearly three-years old. Further, Carneile is doing well in her current placement. Ms. Woodard has a good relationship with appellant and intends to maintain a relationship between appellant and Carneile. Therefore, the court concluded that the best placement for Carneile was with Ms. Woodard. We find there is a substantial amount of competent, credible evidence to support the trial court's decision.
 {¶ 19} Although appellant took steps to comply with the case plan, she failed to complete very significant aspects. Appellant did not complete a drug and alcohol relapse program, she failed to have a psychiatric evaluation and she admitted to having issues related to her prescription drugs. The whole point of the case plan was to get appellant to acknowledge her drug and possible alcohol issues and to resolve these issues through programs and counseling. FCCS and the caseworker provided appellant with the information she needed and worked with appellant to help get her life on track. Carneile is secure in her new home and is doing well with Ms. Woodard and the other children. We do not doubt appellant's love for Carneile. However, appellant has the ability to see Carneile as much as she likes. Ms. Woodard has no intention of keeping appellant from her.
 {¶ 20} Moreover, although appellant felt that she was ready to have Carneile returned to her, when questioned about whether appellant felt she had done everything in the case plan, appellant replied no. "I have to answer that honestly, no. I've not completed it. * * * I need to stay — I got (sic) a long road to travel. I need to stay in counseling. I need to stay with my meetings." (June 17, 2003 Tr. at 30.)
 {¶ 21} As there is competent, credible evidence to support the trial court's decision of legal custody to Ms. Woodard, we overrule appellant's assignment of error.
 {¶ 22} Accordingly, appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
PETREE, P.J., and DESHLER, J., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The caseworker assigned to appellant was Shannon Kelly. She was assigned to the case approximately 19 days after Carneile was removed. Ms. Kelly testified at trial.
[2] At the time of trial, appellant was living with her boyfriend. Although the boyfriend did not show much interest in caring for Carneile, the caseworker testified that she was satisfied with the current housing arrangement of appellant.
[3] There was also discussion at trial regarding the notation on the certificate "Parents Anonymous" which suggested a focus on child abuse and may not have been what appellant needed.
[4] The trial court looked to R.C. 2151.414(D) even though that section applies in permanent court commitments which is not at issue in this case. That section lists various factors for the court to consider in a best interest analysis for permanent custody.